IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID JAMES, §
§
*Petitioner,* §
§
v. § CIVIL ACTION NO. H-07-3671
§
NATHANIEL QUARTERMAN, §
§
*Respondent.* §

## MEMORANDUM OPINION AND ORDER

David James, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction for aggravated sexual assault of a child. Respondent filed a motion for summary judgment (Docket Entry No. 10), to which petitioner responded (Docket Entry No. 14).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this action.

### Procedural Background

A jury found petitioner guilty of aggravated sexual assault of a child in cause number 21928 in the 12th District Court of Walker County, Texas, and assessed punishment at sixty years incarceration with a $10,000.00 fine. The conviction was affirmed on appeal. *James v. State*, No. 01-04-1071-CR (Tex. App. – Houston [1st Dist.] 2006, no pet.) (not designated for publication). Petitioner did not file a petition for discretionary review. Petitioner's state habeas application was denied by the Texas Court of Criminal Appeals without a written order on October 10, 2007. *Ex parte James*, No. 67,714-02, at 2.

Petitioner raises the following grounds for federal habeas relief:

(1)     innocence by reason of insanity;

(2)     improper exclusion of evidence;

(3)     denial of fair and impartial jurors;

(4)     prosecutorial misconduct; and

(5)     ineffective assistance of trial counsel.

Respondent argues that these grounds fail as a matter of law.

*Factual Background*

The state appellate court set forth the following statements of facts in its opinion:

Walker County Sheriff's Deputy Jaime Diaz testified that, in October 2002, he was dispatched to the complainant's home, where he met the thirteen-year-old complainant at 7:45 p.m.   Several other relatives of the complainant and appellant were also present, including Eunice Upson and Iva Rigsby.   The complainant, who was scared and in shock, told Diaz that appellant, his uncle, sexually assaulted him earlier that evening in appellant's bedroom in another uncle's trailer, which was located on the same piece of property as other trailers occupied by the complainant and other family members.

While Diaz was at the complainant's home, appellant called the home to determine why Diaz was there.   The complainant's mother handed Diaz the telephone and told him that appellant was on the phone.   Diaz identified himself to appellant and explained to appellant that he did not have to speak with him.   Appellant then told Diaz that he did not force the complainant to perform oral sex on him, that he had taken medication and was confused, and that he was not sure what he did.

On cross-examination, after appellant's counsel handed Diaz a copy of his interview with Upson, Diaz agreed that Upson had told him that the assault occurred at approximately 10:30 p.m. on October 24, 2002.   Diaz also agreed that this time conflicted with what the complainant had told him about the

timing of the offense.  However, Diaz also explained that it was possible that he did not correctly remember what the complainant had told him.

The complainant testified that one day in October 2002, he was at his uncle Richard's trailer waiting for his aunt to come home from work.  Upson and appellant were also living in the trailer at the time.  The complainant explained that while he was in Richard's bedroom, appellant was in the living room and Upson was asleep on the couch in the living room.  Appellant called the complainant into the living room and asked the complainant to give him his medicine.  When the complainant handed appellant his medicine, appellant told the complainant to sit on the couch by him.  Appellant then told the complainant to 'suck it,' and the complainant told appellant 'no.' Appellant then told the complainant 'come on, it's my birthday.' Again, the complainant told him 'no,' but appellant 'kept on pressuring.'  Appellant threatened 'to tell people stuff about [the complainant] that wasn't true,' like that he was gay. Appellant then 'got [the complainant's] head,' 'put [the complainant's] head in his lap,' and 'told [the complainant] to suck it like a lollipop.'  Appellant then put his penis in the complainant's mouth.  Appellant was 'moving a little' and had his hands on the complainant's back.  Appellant said 'that's it right there,' and ejaculated in the complainant's mouth.  When appellant told the complainant he was finished, he let the complainant up and told him not to tell anyone.  The complainant then went to another trailer, and later told his uncle Anthony, his mother, and his father what had happened.  The complainant testified that he 'felt used.'

On cross-examination, the complainant stated that the assault probably happened between 11:00 p.m. and 1:00 a.m.  He explained that on the day of the incident, a number of people, including appellant, were playing dominos at a family member's trailer, and that he had left that trailer around 11:00 p.m. to go to Richard's trailer.  The complainant denied leading appellant from the dominos game to Richard's trailer.  He also testified that the lights in the living room were off when the assault occurred.

Eunice Upson testified that in October 2002, he was staying at Richard's trailer along with appellant.  One day between October 24 and October 26, 2002, while he was asleep on the couch, Upson overheard appellant say 'something about a birthday present.'  Upson awoke, opened his eyes, and saw appellant and the complainant.  Although the lights were off and Upson did not see appellant's penis in the complainant's mouth, Upson knew 'from the body part

what was happening.'  Upson saw the complainant's head 'going up and down' on appellant's 'private part' and heard appellant tell the complainant to 'suck it like a popsicle.'  Upson wiped his eyes because he could not believe what was happening.  Upson stated that after that 'I know that he's talking to him in that kind of manner, sucking and all that . . . ejaculating in his mouth and all that . . . that's part of . . . what I seen.'  Iva Rigsby, appellant's niece, testified that after the assault, she asked appellant why everybody was mad at him, and he told her because 'his penis was in [the complainant's] mouth.'  Appellant told Rigsby not to tell anyone, especially her brother, who was the complainant's father.  Appellant explained to Rigsby that after he left a party where he had a few drinks, he took his medication and awoke to find that the complainant had appellant's pants down.  When Rigsby asked appellant why he did not stop the complainant, appellant replied that '[the complainant] was almost done.'  Appellant told her that it was a 'birthday present.'

Appellant testified that on the evening of the offense, he was playing dominos and had 'a sip' to drink.  He explained that he is epileptic and that, after taking a sip of his drink, he began to sweat.  The complainant led appellant back to Richard's trailer and put him on the couch, and appellant asked the complainant to bring him his medication and some water.  Appellant took his medication and 'passed out' after Upson had put two fans on him.  Appellant awoke the following morning at approximately 3:00 or 4:00 a.m., and Upson told appellant about two epileptic seizures that appellant had suffered the night before.  Appellant then got a drink of water, went back to sleep, and was awakened around 6:30 a.m. by the complainant's uncle, who was getting home from work and was knocking on the front door.  Appellant opened the door and went back to sleep.

Appellant awoke later around 10:30 a.m. and Rigsby approached him and asked him about what had happened between him and the complainant.  Rigsby did not let appellant finish what he was saying, and she left the trailer.  Appellant stayed at Richard's trailer that day, and then went to the house of one of his other nieces.  Appellant spoke with Rigsby on the telephone that night, and she told appellant that the police were at the complainant's house.  Appellant told Rigsby that he did not do anything.  Appellant then spoke to a police officer, who told him that he needed to surrender himself.  Appellant testified that he did not force the complainant to perform oral sex on him.

On cross-examination, appellant stated that prior to the incident, he had been playing dominos with friends, fixed one drink of gin and grapefruit juice, and took 'only one swallow' of that drink, which he did not finish. He explained that he takes his epilepsy medication twice a day and that his doctor had previously told him not to drink large amounts of alcohol while on medication. Appellant reiterated that the complainant led him back to Richard's trailer, that the complainant gave him his medication and he took it, and that he immediately passed out. Appellant denied having a conversation with Rigsby on the night of the offense, but stated that he spoke with her the morning after. Appellant said that he left Richard's trailer the next night because someone had threatened to kill him. Finally, appellant testified that the complainant, Rigsby, and Upson were lying and that he did not recall the incident in question.

*James*, *1-3.

### *The Applicable Legal Standards*

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

5

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

In the instant case, the trial court did not enter findings of fact.  The district clerk certified that the state application for habeas relief was overruled by operation of law.  *Ex parte James*, p. 34; TEX. CODE CRIM. PRO. article 11.07 § 3(c).  The Texas Court of Criminal Appeals denied habeas relief without a written order.  These actions constitute adjudications on the merits of petitioner's state habeas claims, giving rise to application of the AEDPA standard of review.  *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).  Because this

Court reviews only the reasonableness of a state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without a written opinion. In this situation, the Court is to assume that the state court applied the proper clearly established federal law, and then determine whether its decision was contrary to, or an objectively unreasonable application of, that law. *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006). Thus, petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts as established in the record. 28 U.S.C. § 2254(d).

*Improper Exclusion of Evidence*

Petitioner complains that the trial court erred in excluding evidence that complainant attempted a consensual sexual encounter with petitioner a week before the instant offense. In rejecting this claim of error on direct appeal, the state court of appeals held as follows:

> In his second issue, appellant contends that the trial court erred in excluding evidence of an alleged sexual encounter between appellant and the complainant that occurred approximately one week prior to the instant offense. Appellant asserts that the 'prior sexual encounter closely resembled the act alleged against appellant in the indictment' and that evidence of this prior sexual encounter was relevant and was more probative than prejudicial.
>
> We review a trial court's decision to exclude evidence under an abuse of discretion standard. Therefore, we will not reverse a trial court as long as its ruling was within the 'zone of reasonable disagreement.'
>
> During appellant's direct-examination, appellant informed the trial court that he intended to testify regarding the extraneous incident. The basis of

appellant's offer was to establish that the complainant had previously tried to perform oral sex on appellant and that appellant was under the influence of drugs and alcohol, was epileptic, and did not know what was happening at the time of the offense.  The trial court conducted an in-camera hearing, in which appellant testified that in the week preceding the assault, he was in the restroom in Richard's trailer giving himself a sponge bath.  The complainant knocked on the door and asked to use the restroom, and appellant let him into the restroom.  Appellant stated that as he was getting dressed, the complainant 'went down on [him]' and the complainant 'put [appellant's] private in [his] mouth.'  Appellant stated that he pushed the complainant away and asked him what he was doing.  The complainant told appellant that 'he was going to give [appellant] some more later,' and appellant told him 'no, you're not, go home.'

The State argued that this evidence was inadmissible under Texas Rule of Evidence 412, which provides that '[i]n a prosecution for . . . aggravated sexual assault . . . reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.'  Tex. R. Evid. 412(a). Rule 412(b) further provides:

> In a prosecution for . . . aggravated sexual assault . . . evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
>
> *     *     *     *
>
> (2) it is evidence:
>
> (A) that is necessary to rebut or explain scientific or medical evidence offered by the State;
>
> (B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;
> (C) that relates to the motive or bias of the alleged victim;
>
> (D) is admissible under Rule 609; or
>
> (E) that is constitutionally required to be admitted; and

8

(3) its probative value outweighs the danger of unfair prejudice.

*Id.* No other evidence was presented at the in-camera hearing.  At the conclusion of the hearing, the trial court ruled that appellant's testimony was not admissible and that its probative value did not outweigh the danger of unfair prejudice.

In his brief, appellant asserts that his testimony regarding the alleged prior sexual encounter should have been permitted under rule 412(b)(2)(B), which pertains to consent, and rule 412(b)(2)(C), which pertains to motive and bias. In regard to rule 412(b)(2)(B), consent was not an issue relevant to appellant's guilt or innocence of the offense of aggravated sexual assault of a child and this testimony was not admissible under this exception.

In regard to rule 412(b)(2)(C), appellant did not provide the trial court with any explanation regarding how the alleged prior sexual encounter would tend to show motive or bias by the complainant.  Rather, appellant offered the testimony to establish that appellant did not know what was happening and that the complainant had previously voluntarily performed oral sex on appellant. Following the in-camera hearing, the State asserted that appellant had not made a showing of motive or bias.  Although the trial court made findings on each of the exceptions in rule 412(b), including a finding that the evidence did not relate to motive or bias, the court specifically stated that appellant 'hasn't even said that.'  We agree that appellant did not present the trial court with any explanation regarding how the excluded testimony would tend to show motive or bias by the complainant, and appellant has failed to offer any additional explanation on appeal.

Accordingly, we hold that the trial court did not err in excluding the proffered testimony under rule 412(b).  Thus, we need not address appellant's argument that the trial court further erred in concluding that the probative value of the proffered testimony did not outweigh its danger of unfair prejudice.

*James*, *4-5 (citations omitted).

In his response to the motion for summary judgment, petitioner argues that exclusion

of the evidence was improper under state law and denied his federal constitutional right to

present a defense.  It is well established that a petitioner's disagreement with the exclusion of evidence under state law does not raise a cognizable federal habeas claim, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).   As the Supreme Court emphasized in *McGuire*, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. at 67-68.  Instead, the only relevant inquiry for this Court is whether exclusion of the evidence violated petitioner's federal constitutional right to present a defense.

A careful review of petitioner's state court proceedings fails to reveal that petitioner challenged exclusion of the evidence on federal constitutional grounds. To have presented fairly a claim to the state courts, a petitioner seeking federal habeas relief must have referred to a specific federal constitutional guarantee in his arguments before the state courts and provided them with a specific statement of the facts entitling him to relief.  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996 ).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Wilder v. Cockrell*, 274 F.3d 255, 259-60 (5th Cir. 2001).  On both direct appeal and collateral review, petitioner in this case challenged the evidentiary exclusion as a violation of state law.  Accordingly, his instant challenge on federal constitutional grounds is unexhausted and procedurally defaulted.

Federal habeas relief will not be granted on a procedurally defaulted claim unless the petitioner can demonstrate both good cause for the default and actual prejudice as a result of

the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice in that he is actually innocent of the offense. Petitioner satisfies none of these requirements, and the Court is barred from consideration of petitioner's defaulted habeas ground. *See Nobles v. Johnson,* 127 F.3d 409, 422 (5th Cir. 1997).

Even assuming this issue were properly before the Court, it would provide petitioner no basis for federal habeas relief. The right to present a defense is not absolute, and must be exercised with due regard for state evidentiary rules. *Trussell v. Estelle*, 699 F.2d 256, 262-63 (5th Cir. 1983). Due process considerations hold sway over state evidentiary rules only when the exclusion of evidence undermines fundamental elements of a defendant's defense. *U.S. v. Scheffer*, 523 U.S. 303, 315 (1998). In the instant case, petitioner simply states that the excluded evidence was offered "as a defense to the charged offense." (Docket Entry No. 14, p. 5.) While petitioner agrees that the evidence could not be used to establish a defense of consents, he fails to identify a recognized, lawful defense to which the excluded evidence was a fundamental element. Consequently, he fails to demonstrate that exclusion of the evidence violated his federal constitutional right to present a defense. Habeas relief under this issue is denied.

*Denial of Fair and Impartial Jurors*

Petitioner asserts that blacks were not adequately represented on the jury panel and jury.  He does not assert that the State exercised its peremptory strikes in a racially-motivated manner.

The Sixth Amendment and the Due Process Clause require that a jury be drawn from a fair cross-section of the community.  *Taylor v. Louisiana,* 419 U.S. 522, 527 (1975). To establish a *prima facie* violation of the fair cross-section requirement, a petitioner must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979); *U.S. v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001).

As his sole support for his claim, petitioner references his trial counsel's comment during *voir dire* that he was "concerned about the lack of black faces in the pool."  In response to counsel's comment, the trial court replied, "I can't help that.  I mean, yeah, I see your point, but I can't help that."  R.R., Vol. 2, p. 19.  Trial counsel made no further objections or motions regarding the jury panel.  Following the seating of the actual jury, trial counsel stated that he had "no objection" to the jury.  *Id*., p. 101.

12

In support of this habeas ground, petitioner presents nothing more than conclusory, unsupported allegations that there was an unconstitutional ratio between black and white venirepersons on his jury panel.  Petitioner provides absolutely no evidence regarding the percentage of blacks in the community, nor the composition of other venires drawn from Walker County.  Absent evidence of the percentage of blacks in the community, there is no baseline against which to compare the composition of his venire.  *See Duren*, 439 U.S. at 364 ("[T]he defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement.").  The Court cannot, and does not, speculate as to these percentages and composition.  Petitioner fails to present clear and convincing evidence to rebut the state court's determination rejecting this habeas claim.

Petitioner further claims that a juror, Mr. Cirrito, was biased and prejudiced against petitioner.  A review of the *voir dire* record shows the following relevant exchanges:

PROSECUTION:    On the second row.  Mr. Cirrito.  Okay.  Anything about that, the fact that you, a close friend or a family member were the victim of sexual assault that would make you think you couldn't be fair and impartial in this case knowing the kind of case it is?

MR. CIRRITO:       No.

Vol. 2, p. 64.

THE COURT:        Mr. Cirrito, could you come up please, sir.  Thank you.  They want to clarify a point or two with you.

MR. CIRRITO:       Yes, sir.

13

DEFENSE COUNSEL:     You indicated that you had a friend or a close family member that had been a victim of a sexual assault.

MR. CIRRITO:       And that was my mother.

DEFENSE COUNSEL:     Okay.

MR. CIRRITO:       It was about twenty years ago.

DEFENSE COUNSEL:     And I do not recall your answer.  Would that experience of your mother's and your knowledge of it affect your ability to be fair and impartial in this case?

MR. CIRRITO:       No, I don't think that it would.

DEFENSE COUNSEL:     I actually believe him.

*Id.*, p. 99.  The record shows that Mr. Cirrito was a member of the seated jury.  *Id.*, p. 100.

As support for his argument that Mr. Cirrito was inherently biased against him, petitioner contrasts Mr. Cirrito's testimony with the voir dire testimony of another jury panel member, Ms. Hightower.  Ms. Hightower testified that because her aunt had been sexually assaulted, she could not be fair and impartial.  The trial court granted defense counsel's motion to strike Ms. Hightower for cause.  Petitioner alleges that because Ms. Hightower expressed her inability to be fair or impartial, it proves that Mr. Cirrito lied about not being biased and impartial.  Not surprisingly, petitioner presents no legal or factual support for this argument, and this Court finds none.  Juries are presumed to be impartial, and absent extraordinary circumstances, bias should not be imputed to jurors.  *See Andrews v.. Collins,* 21 F.3d 612, 620 (5th Cir. 1994).  It is sufficient if a juror can lay aside his impression or

14

opinion and render a verdict based on the evidence presented in court.  *Virgil v. Dretke*, 446 F.3d 595, 609 (5th Cir. 2006).

To the extent petitioner is attempting to assert implied or presumptive bias on the part of Mr. Cirrito, no such factual grounds appear in the record, nor does petitioner rebut Mr. Cirrito's testimony that his mother's experience would not affect his ability to be fair and impartial in petitioner's case.  Simply put, neither Mr. Cirrito's prior experience nor his testimony during *voir dire* demonstrate grounds for objecting to, or striking, him from the jury panel, and no constitutional violation is shown.  Petitioner's allegation that Mr. Cirrito "answered questions under oath untruthfully" is conclusory, unsupported by any evidence in the record, and does not stand as probative evidence sufficient to raise a genuine issue of material fact precluding summary judgment.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment on these claims.

### Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To

assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness

16

does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

In his response to the motion for summary judgment, petitioner claims that trial counsel (a) failed to move to strike venireman Mr. Cirrito for cause, and (b) failed to object to the exclusion of testimony regarding complainant's prior attempted sexual encounter.[1] This Court has already determined in the previous section of this opinion that petitioner failed to establish that Mr. Cirrito was not a fair or impartial juror. Accordingly, counsel was not ineffective in failing to move to strike Mr. Cirrito for cause. Counsel is not deficient for failing to raise a futile or meritless objection. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner's second instance of alleged ineffective assistance of counsel is without factual or legal support. Not only did counsel object to the exclusion of petitioner's proffered evidence of complainant's prior attempted consensual sexual encounter, but he made a record of the evidence, which was submitted on appeal. The trial court's exclusion of the evidence

---

[1] Petitioner alleged other instances of ineffective assistance in his petition, but did not respond to the motion for summary judgment regarding these claims. Accordingly, petitioner has abandoned claims for these other instances of ineffective assistance. *See Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff abandoned retaliatory abandonment claim when she failed to defend claim in response to motion to dismiss); *see also Vela v. City of Houston,* 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1164 (5th Cir. 1983). Nevertheless, the Court has reviewed petitioner's abandoned *Strickland* claims and finds them without merit under 28 U.S.C. § 2254(d).

was upheld on appeal. *James*, *4-5.  Under these circumstances, petitioner demonstrates neither deficient performance nor prejudice.

The state habeas court denied relief on these issues.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment dismissing this issue.

### *Prosecutorial Misconduct*

Petitioner claims that the State prosecutor wrongfully injected her personal opinions into the trial, denying him due process and a fair trial.  In his response to the motion for summary judgment, petitioner argues that, after the trial court heard argument of counsel regarding the admissibility of complainant's earlier attempted consensual sexual act with petitioner, and outside the jury's presence, the prosecutor stated her personal opinion, as follows:

> PROSECUTION:    Well, the problem with that, Judge, is he's going to make a baseless allegation.

> THE COURT:      I know.

> PROSECUTION:    And it's going to prejudice our case.

Vol.  4, pp. 28, 31-32.

In order to merit the granting of habeas relief under this issue, petitioner must show a "failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it [the court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. People of the State of California*, 314 U.S. 219, 236 (1941); *Peters v. Whitley,* 942 F.2d 937, 940 (5th Cir. 1991).  Petitioner fails to present, and the record fails to show, any probative summary judgment evidence or legal authority showing that this exchange between the prosecutor and the state judge outside the presence of the jury denied him a fair trial.  Petitioner also claims that, through this exchange, the prosecutor coerced the state court to improperly exclude petitioner's proposed evidence regarding complainant's earlier attempted consensual sexual encounter.  As this Court already rejected petitioner's argument that the evidence was improperly excluded, no denial of a fair trial is shown.[2]

The state court denied habeas relief.  Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment dismissing these claims.

---

[2]Respondent moved for summary judgment on all of petitioner's prosecutorial misconduct claims.  Petitioner responded only to the prosecutor's "personal comment" issue.  His other claims of prosecutorial misconduct are deemed abandoned by his failure to address them in his summary judgment response.  *See* n. 1, *supra*. The Court has reviewed petitioner's abandoned prosecutorial misconduct claims, and finds them without merit under 28 U.S.C. § 2254(d).

*Innocence By Reason of Insanity*

Petitioner claims that he is innocent because he was insane at the time of the offense. Neither party has addressed this claim in the pending summary judgment proceedings. Accordingly, the Court has reviewed this claim under Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254, and finds it without merit.

Petitioner asserts a "bare innocence" claim under *Herrera v. Collins*, 506 U.S. 390 (1993). Such claim is not an independently cognizable federal habeas claim in a non-capital state felony offense. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *see also House v. Bell*, 547 U.S. 518 (2006) (declining to resolve whether a stand alone *Herrera*-type actual innocence claim is a cognizable habeas corpus claim in non-capital offenses). Regardless, there also must be evidence of an independent constitutional violation in the state criminal proceeding. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). Here, petitioner has failed to establish an underlying constitutional violation. Nor is there any affirmative evidence of his actual innocence. Rather, petitioner asserts that he was insane at the time of the offense, and refers the Court to eight pages of purported medical records from Tri-County Mental Health Mental Retardation Services. (Docket Entry No. 14, exhibits.) These documents are dated no later than 1999 and reflect only petitioner's self-reported history of epilepsy. There is no independent diagnosis of epilepsy, and no determination that petitioner experienced a seizure the night of the offense. These documents establish neither petitioner's insanity nor his actual innocence. Regardless, it is not clear

20

whether an assertion of insanity is properly considered under the "actual innocence" standard. *See Robison v. Johnson*, 151 F.3d 256, 267 (5th Cir. 1998) (assuming without deciding that proof of insanity deserves same treatment as claim of actual innocence). Accordingly, petitioner has not shown that he is entitled to relief under this issue.

To the extent petitioner challenges the evidence as legally insufficient, the issue was resolved against him on direct appeal, as follows:

> In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because he denied that he sexually assaulted the complainant and there is 'no physical evidence or biological evidence of a sexual assault having occurred.'
>
> We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. A review of the evidence for legal sufficiency does not involve a re-weighing of the evidence or a substitution of the fact finder's judgment. We note that the fact finder is the exclusive judge of witness credibility, the determiner of the weight accorded to witness testimony, and the reconciler of conflicts in the evidence.
>
> A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor and the child is younger than fourteen years of age.
>
> Here, the complainant testified that after appellant called him into the living room to give him his medicine, appellant told the complainant to sit on the couch by him and to 'suck it.' Although the complainant told appellant 'no' several times, appellant stated 'it's my birthday' and 'kept on pressuring' the complainant. Appellant, after threatening 'to tell people stuff about [the complainant] that wasn't true,' 'got [the complainant's] head,' 'put [the complainant's] head in his lap,' 'told [the complainant] to suck it like a lollipop,' and put his penis in the complainant's mouth. After appellant

21

ejaculated in the complainant's mouth and told the complainant he was finished, appellant let the complainant up and told the complainant not to tell anyone.  We note that the testimony of a complainant, 'standing alone, is sufficient to support a conviction for sexual assault.'

Additionally, Upson testified that he was asleep on the couch when he overheard appellant say 'something about a birthday present.'  Upson woke up, saw the complainant's head going up and down on appellant's 'private part,' and heard appellant tell the complainant to 'suck it like a popsicle.'  Rigsby testified that appellant admitted to her that his penis had been in the complainant's mouth.  Specifically, appellant told Rigsby that after he left a party, he took his medication and woke up to find that the complainant had his pants down and that he did not stop the complainant when he woke up because the complainant 'was almost done.'  Appellant also told Rigsby that it was a 'birthday present.'

It is true that the State did not offer any physical or biological evidence at trial, and appellant did testify that he had 'passed out' on the couch, denied that he had forced the complainant to perform oral sex, and stated that the complainant, Rigsby, and Upson were lying.  However, the jury is the sole judge of the credibility of the witnesses at trial and it was free to accept the testimony of the complainant, Upson, and Rigsby and reject the testimony of appellant.  Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of aggravated sexual assault of a child.

*James*, *7-10 (citations omitted).

The Court has reviewed petitioner's insufficiency claim and finds it without merit.

In reviewing the sufficiency of the evidence, the federal standard for review is whether any

rational trier of fact could have found the essential elements of the offense (as established

by state law) beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the

"responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id*. Any contradictory testimony does not affect the validity of the guilty verdict. *Id*. The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state court of appeals in its opinion is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). An independent review of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict.

Petitioner fails to show that the state court's determination on this issue was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Petitioner is not entitled to habeas relief under this issue, and his claim is dismissed with prejudice.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 10) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED as moot.

The Clerk is to provide a copy of this order to all parties.

Signed at Houston, Texas on July 10, 2008.

_____
Gray H. Miller
United States District Judge

24